UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CIV-23977-MOORE/LOUIS

JASMINE YAMINI, on behalf of
Herself and others similarly situated,

    Plaintiff,

v.

SPECTRIO, LLC,

    Defendant.
_____/

**JOINT MOTION TO APPROVE SETTLEMENT OF FLSA CLAIM
AND JOINT STIPULATION OF DISMISSAL WITH PREJUDICE**

Plaintiff, Jasmine Yamini ("Plaintiff"), and Defendant, Spectrio, LLC ("Defendant") (collectively, "the Parties"), through their counsel, stipulate to the voluntary dismissal with prejudice of this action in its entirety under Fed. R. Civ. P. 41(a)(1), subject to the Court's review and approval of the Settlement Agreement ("Agreement") resolving Plaintiff's claims under the Fair Labor Standards Act ("FLSA"). The Parties jointly move the Court for entry of an Order approving the Agreement and to dismiss this action with prejudice. A copy of the Parties' fully executed Agreement is attached hereto as **Exhibit A**.

**I.**     **Background**

Plaintiff in the instant case asserted a claim for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") based on Defendant's alleged misclassification of Plaintiff as an exempt employee and violation of the overtime regulations. Defendant denies Plaintiff's claim and asserts that Plaintiff was properly classified as exempt and, therefore, was not entitled to any overtime. From the onset of this litigation, the Parties laid out their respective positions on the facts and law. Ultimately, the Parties reached a negotiated settlement of this action under the terms set forth in the attached Agreement being submitted for approval by the Court.

More specifically, as set forth in the Complaint, as well as Plaintiff's Statement of Claim, see D.E. #8, Plaintiff alleged that during the three (3) year statute of limitations period between February 2022 and January 2023, Ms. Yamini worked for Defendant as a remote "Account Manager" and Plaintiff's primary duties consisted of selling Spectrio, LLC's marketing products and services by, *inter alia*: (a) talking to Defendant's new and existing customers about selling new and/or additional services in order to achieve monthly and quarterly sales goals; (b) actively prospecting to supplement the lead flow provided by Defendant's team of Client Care Specialists

to bolster the lead-sales pipeline with additional leads; (c) customer service support tasks for issues such as customer questions, facilitating technical support, and client services-payment or other issues to avoid customer cancellations; and (d) working with Excel spreadsheets for, *inter alia*, for sales predictions, reports on customers who cancelled/stopped using Spectrio's products and services, and payments made by and due from customers.  In this regard, Plaintiff alleged that between February 2022 and January 2023, she regularly worked Monday through Friday with start times of between approximately 6:30-7:00 a.m. and with stop times between approximately 7:30-8:00 p.m. averaging approximately Twelve (12) hours per day and regularly working a total average of approximately Sixty (60) hours per week, such that based upon Spectrio, LLC paying Plaintiff average gross weekly wages of approximately $1,046.84 per week between $865.38 in salaried wages and $181.46 in commissions, if Plaintiff's unpaid overtime wages were found to be due and owing for an average of Twenty (20) unpaid overtime hours per week at the time and one-half rate of $39.26/hour during a total of Thirty-Seven (37) out of Fifty (50) work weeks between February 2022 and January 2023, Plaintiff's unpaid overtime wages could total $29,049.40 [$1,046.84/40 hours =  $26.17/hour x 1.5 = $39.26/hour x 20 Unpaid OT hours/week x 37 work weeks between 2/17/22 and 1/31/23 = $29,049.40] on a time and one-half basis, whereas if Defendant could demonstrate that the "fluctuating workweek method," 29 C.F.R. §778.114, governs the calculation of Plaintiff's unpaid overtime wages on a half-time basis at the rate of $10.07/hour [$1,046.84/60 hours = $17.45/2 = $8.72/hour], Plaintiff's overtime wages would total $6,455.53 [$10.07/hour x 20 Unpaid OT hours/week x 37 work weeks = $6,455.53].

As set forth in Defendant's Response to Plaintiff's Statement of Claim, D.E. #16, contrary to Plaintiff's assertions, the three-year statute of limitations is inapplicable to this action because Defendant employed Plaintiff from March 1, 2022 through February 1, 2023, which is within two (2) years of her filing this action. As a matter of law, Defendant has maintained that the FLSA's three-year statute of limitations was also inapplicable because Defendant's actions in connection with Plaintiff's pay and exempt designation were not willful violations.  Next, Plaintiff's job duties as an "Account Manager" consisted of the general summary described in the statement of claim plus additional duties.  Most notably, Plaintiff's primary duty was performing non-manual work that was directly related to Spectrio, LLC's business operations, *i.e.*, selling and maintaining its products and services and servicing its customers. In executing those duties, Plaintiff had significant autonomy and discretion to use her best judgment with respect to pricing products and services

offered to Defendant's existing and new customers. For example, if an existing customer wanted to expand its use of Defendant's products, but required a reduction in pricing to do so, Plaintiff possessed the discretion to use her judgment to work with the client to lower pricing to permit the customer to expand its use of products. In this example, Plaintiff had to evaluate options and courses of action to come to a satisfactory resolution to retain the customer and expand business. Those decisions as well as other decisions made by Plaintiff had significant financial impact on the company. Further, Plaintiff's job permitted her to earn $107,000 annually, including her $45,000 salary.

Significantly, Defendant has also maintained at all times throughout this case that Plaintiff *did not* work Monday through Friday as she claimed, and in fact, she often worked much less than a full workday. Accordingly, Plaintiff did not work an average of 60 hours a week during her employment with Spectrio, LLC as set forth in Plaintiff's Statement of Claim. Rather, Plaintiff often was not engaged in her work at all and was unresponsive while not working for extended periods. For that reason, Plaintiff's supervisor instituted daily check-ins which Ms. Yamini often missed. Moreover, Plaintiff engaged in non-work-related travel, which may explain her not working, her low production, missing calls, and otherwise being nonresponsive.

Finally, even assuming, *arguendo*, that Plaintiff could have proven that she was entitled to some unpaid overtime because she was misclassified, Plaintiff's computation of damages in her Statement of Claim was overinflated because she did not work 20 hours of overtime in every workweek. Similarly, Plaintiff's salary was meant to cover all her hours worked, thereby triggering the FLSA's "fluctuating workweek method" and application of the half-time rate as the correct rate to calculate any unpaid overtime wages for an employee who is misclassified as exempt. Likewise, Defendant further contends that liquidated damages were inappropriate in this case because Defendant acted in good faith in paying the Plaintiff a salary and because Spectrio, LLC carefully examined the "Account Manager" position and concluded that it was an exempt position under the FLSA's administrative exemption.

**II.**      **Legal Principles**

Under well-established law, in two ways claims under the FLSA can be settled and released by employees. First, section 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employees is supervised by the Secretary of Labor. See 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States*, 679

F.2d 1350 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the court enters a judgment approving the fairness of the settlement. *Id.*; *see also Schulte, Inc. v Gandi*, 328 U.S. 108 (1946); *Jarrad v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947). In addressing the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has explained:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial contact. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a compromise is reached over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores*, 679 F.2d at 1354.

### A. THE RESOLUTION OF PLAINTIFF'S UNDERLYING FLSA CLAIMS IS FAIR AND REASONABLE

The settlement of this action involves just such a situation in which the Court may approve the Parties' Agreement to resolve and release Plaintiff's FLSA claims. The Parties' settlement arises out of an action filed by Plaintiff against her former employer, which is adversarial. *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th Cir. 2012) (finding *Lynn's Food* fairness concerns not implicated regarding settlement that occurred within the context of a lawsuit when a plaintiff employee is represented by counsel), *followed by Smith v. Tri-City Transmission Serv.*, 2012 U.S. Dist. LEXIS 119428 (D. Ariz. Aug. 23, 2012). During the litigation and settlement of this action, Plaintiff is and was represented by counsel.

The Parties' settlement of Plaintiff's FLSA claim results from a *bona fide* compromise between them on various disputes of law and fact, including without limitation: (a) whether Plaintiff was properly classified as an exempt employee; (b) the number of hours Plaintiff allegedly worked performing various tasks for Spectrio, LLC each workweek; (d) whether Plaintiff worked any of the overtime hours she claimed herein; (e) whether the alleged actions of Defendant were willful; and (f) whether Defendant acted in good faith as a matter to avoid the imposition of liquidated damages under 29 U.S.C. §216(b).

The factors below are typically considered by the Court in determining the reasonableness of the agreement:

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of plaintiff's success on the merits;
(5) the range of possible recovery; and
(6) the opinions of the counsel.

*Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792 (M.D. Fla. Jan. 8, 2007) *report and recommendation adopted,* No. 6:05-CV-592-ORL-22JGG, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007).

As to the *first factor*, there is no fraud or collusion behind the settlement. Each party was represented by counsel experienced in FLSA matters and who regularly litigate labor and employment matters. After the parties exchanged relevant wage and hour records and other documents supporting each Parties' claim or defense, the Parties resolved the claim because of the inherent risks and substantial costs of litigation. *Infra.*

As to the *second factor*, this action would have required the analysis of hundreds of documents and conducting (and preparing for) multiple depositions. The Parties would have had to expend considerable time and resources litigating representative class motions, moving for summary judgment, and preparing for trial, as well as attending a three-to-five-day trial. The expense of litigation to Defendant is far greater than the amount of the settlement. Likewise, Plaintiff's risk of losing the trial and the duration of the litigation weigh heavily in favor of settlement.

As to the *third factor*, the litigation is in the pleading phase. Nonetheless, in compliance with the Court's order to provide records, the requirement to exchange initial disclosures, and to facilitate settlement, Defendant produced records to Plaintiff to address the disputed issues. In the absence of this settlement, the Parties would have to engage in discovery, exchange and analyze many documents, engage in litigation related to collective action and class certification, and depose each other's witnesses. Because of the Parties' settlement conferral efforts, they resolved this matter without the need for extensive discovery and prolonged litigation.

As to the *fourth factor*, there are disputed issues. Defendant disputes that it misclassified Plaintiff as exempt. Defendant further disputes Plaintiff's allegations that she worked 20 hours of overtime in every workweek. Defendant also disputes any allegation that its actions were willful.

Defendant alleges that it acted in good faith and had a basis for paying Plaintiff the way it paid her. Thus, there is a *bona fide* dispute about whether Plaintiff is entitled to overtime pay.

As to the *fifth factor*, if Defendant would have prevailed on its defenses, Plaintiff might have recovered nothing or far less than what she is receiving under the settlement and may have owed a cost judgment to Defendant. If Plaintiff were to prevail, Defendant might be indebted to Plaintiff, and perhaps others, for a judgment for wages, for part or the entirety of Plaintiff's claim, an award for liquidated damages, and attorney's fees and costs. Thus, the Parties recognize the inherent uncertainty in proceeding with this action, the preoccupation of litigation, the investment of additional time to continue litigating this case, and the added expenditure of fees and costs that will accrue as this matter progresses. In recognition of these concerns, the Parties have agreed to resolve this action.

As to the *sixth factor*, counsel for the Parties believe the settlement is a fair and reasonable resolution of the FLSA claim. Plaintiff's counsel and Defendant's counsel are experienced attorneys with a significant background in FLSA litigation, including collective actions.

**B.    THE STIPULATED AND NEGOTIATED PAYMENT OF PLAINTIFF'S ATTORNEY'S FEES AND COSTS**

In addition to the consideration to be paid by Spectrio, LLC to Ms. Yamini to resolve her underlying FLSA claims, Defendant has also agreed to pay $7,300.00 to resolve Plaintiff's claims for attorneys' fees along with $700.00 for costs, which amounts were authorized by Plaintiff and negotiated separately from Plaintiff's attorneys' fees or costs and without regard to the consideration being paid to settle Plaintiff's claims for alleged overtime wages and liquidated damages. As numerous Courts have held, where a "plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to her attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. *See, e.g., Bonetti v. Embarq Management Co.,* 715 F. Supp. 2d 1222, 1227-1228 (M.D. Fla. 2009). Here, while Plaintiff's attorneys' fee time in this case totaled $10,355.00 as set forth in the Declaration of Plaintiff's Counsel, Keith M. Stern, Esquire, from 21.80 hours of Plaintiff's Counsel's time at the rate of $475.00/hour [21.80 hours x $475.00/hour = $10,355.00], *see* Stern. Decl. ¶ 3, along with costs of $700.00—with Plaintiff's Counsel having paid on Plaintiff's behalf and incurred costs including the filing fee to the U.S. Clerk of Court ($402.00), service of process

($100.00), legal research ($250.00), and PACER ($10.00)—the compromise to resolve Plaintiff's attorneys' fee claim ensures Plaintiff has no out-of-pocket expense for either fees or costs, which resolution is also fair and reasonable consistent with Lynn's Food Stores and precedent within the Eleventh Circuit.  Thus, the recovery by Plaintiff was not adversely affected by the amount of the attorney's fees and costs to be paid to her counsel by Spectrio, LLC in this case. *See also*, *Furie v. Expel, LLC,* No. 3:19-CV-117-J-32PDB, 2019 U.S. Dist. LEXIS 235560, at *11 (M.D. Fla. Sep. 17, 2019) (following *Bonetti*, as the fees were separately negotiated, the court declared it unnecessary to conduct a lodestar review); *Texas v. New World Van Lines of Fla.*, No. 6:20-cv-445-RBD-LRH, 2021 U.S. Dist. LEXIS 110172 at *7-8 (M.D. Fla. June 10, 2021) (accepting the representations of the attorneys that the fees were separately negotiated, the Court accepts and approves the fees to be paid without further scrutiny).

The Parties stipulate that the amounts for attorneys' fees and costs Defendant has agreed to pay Plaintiff and her counsel is fair.  The Parties negotiated and Defendant has agreed to pay the sum of in the settlement agreement for fees and costs incurred by Plaintiff. Bargained-for provisions on attorney's fees in a settlement agreement control the issue of attorney's fees. *Embree v. Medicredit, Inc*., 752 F. App'x 697, 700 (11th Cir. 2018) (citing *Pottinger v. City of Miami*, 805 F.3d 1293, 1300 (11th Cir. 2015)).  Even when an attorney's fee motion is pending and the parties negotiate to settle the attorney's fees, the Courts typically do not scrutinize the fees. Indeed, when there is a Motion for attorney's fees pending, Courts often direct and suggest that plaintiff and defense attorneys seek to negotiate a settlement and compromise, which when they do, is accepted, and approved by the courts without question or scrutinizing the lodestar and billing records of plaintiff' counsel.  *See Smith v. Bulls-Hit Ranch & Farm*, No. 3:12-cv-449-J-34TEM, 2013 U.S. Dist. LEXIS 84759, at *10-12 (M.D. Fla. Jan. 11, 2013).

The settlement negotiated and reached by the Parties reflects a reasonable compromise of the disputed issues. Plaintiff and her counsel discussed the viability of Plaintiff's claims and formulated their own proposed settlement figures. The Parties then continued to engage in settlement discussions based on their independent calculations.

The Parties, through their attorneys, voluntarily agreed to the terms of their settlement during negotiations. All Parties were counseled and represented by their attorneys through the litigation and settlement process. The Agreement has been signed by the Parties.

CASE NO. 23-CIV-23977-MOORE/LOUIS

### III. Conclusion

For the foregoing reasons, the Parties jointly request that this Court approve the Parties' settlement agreement as to Plaintiff's FLSA claim and request that the Court dismiss this entire action with prejudice, with the Court retaining jurisdiction to enforce the parties' settlement.

Respectfully submitted this 12th day of February 2024.

| | |
|---|---|
| By: */s/Keith M. Stern*<br>Keith M. Stern, Esq.<br>Florida Bar No. 321000<br>Email: *employmentlaw@keithstern.com*<br>LAW OFFICE OF KEITH M. STERN, PA<br>80 S.W. 8thStreet, Suite 2000<br>Miami, Florida 33130<br>Tel: (305) 901-1379<br><br>*Counsel for Plaintiff* | By: */s/Paul F. Penichet*<br>Paul F. Penichet, Esq.<br>Florida Bar No. 899380<br>Email: *paul.penichet@jacksonlewis.com*<br>Audrey-Jade Salbo, Esq.<br>Florida Bar No. 119370<br>Email: *Audrey-Jade.Salbo@jacksonlewis.com*<br>JACKSON LEWIS P.C.<br>One Biscayne Tower, Suite 3500<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone: (305) 577-7600<br><br>*Counsel for Defendant* |